IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DIANE L. KLIVINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-574-CWB |
| | ) |
| DR. ASHA VOSS, M.D., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

Now before the court is a motion filed by Triad of Alabama, LLC d/b/a Flowers Hospital ("Flowers Hospital") to dismiss certain counts of the Complaint. For the reasons set forth below, the court finds that the motion is due to be granted in part and denied in part.

**I.    Introduction**

Plaintiff filed this action on September 27, 2022 to assert various causes of action against Flowers Hospital, Dr. Asha Voss, Obstetrics and Gynecology of Dothan, Inc., MagMutual, and CHSPSC, LLC. (Doc. 1). All of Plaintiff's claims center around the circumstances of her employment. (*Id.*). As to Flowers Hospital, Plaintiff asserts claims for fraudulent concealment (Count 3), fraud in the procurement (Count 8), concerted effort to intentionally inflict injury (Count 9), conspiracy to defraud (Count 12), libel (Count 21), and intentional interference with job opportunities (Count 22). Flowers Hospital in turn asserts that Plaintiff's claims fail to satisfy the pleading requirements of Rule 12(b)(6) of the Federal Rules of Civil Procedure and/or the heightened pleading standards imposed by Rule 9 of the Federal Rules of Civil Procedure.

1

## II.     Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss an action for "failure to state a claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6). In order to survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff."  *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).  The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint alleges fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citation omitted).  According to the Eleventh Circuit, a complaint satisfies Rule 9(b) if it sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) ("… Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud."). Nonetheless, "this does not require every element to be stated with particularity, but rather the 'pleader must use more than generalized or conclusory statements setting out the fraud.'" *Buckmasters, Ltd. v. Action Archery, Inc.*, 915 F. Supp. 1188, 1194 (M.D. Ala. 1996) (quoting *Mays v. United Ins. Co. of America*, 853 F. Supp. 1386, 1389 (M.D. Ala. 1994)). Rule 9(b) also must be read "in conjunction with Rule 8(a)." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1371 (11th Cir. 1997); *see also Clausen,* 290 F.3d at 1310.

### III. Discussion

#### A. Count 3 – Fraudulent Concealment of Material Facts

Count 3 of the Complaint alleges that Flowers Hospital concealed certain material facts from Plaintiff and thereby induced her to move her medical practice to Obstetrics Gynecology—causing her to suffer various types of damages. (Doc. 1 at pp. 16-19; *see also id*. at pp. 18-19, ¶¶ 53-55). "To establish a prima facie case of fraudulent concealment of a material fact, a plaintiff must show (1) that the defendant had a duty to disclose a material fact, (2) that the defendant concealed or failed to disclose a material fact, (3) that the defendant's concealment or failure to disclose the material fact induced the plaintiff to act or to refrain from acting, and (4) that the plaintiff suffered actual damage as a proximate result." *Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So. 2d 1288, 1292 (Ala. 1993).

Flowers Hospital asserts that Count 3 "fails to identify the essential pleading elements of th[e] alleged fraud." (Doc. 30 at p. 4). Flowers Hospital first argues that "Plaintiff does not identify 'precisely what statements or omissions were made' nor does she identify 'the time and place of each such statement.'" (*Id*. at p. 5) (citation omitted). Flowers Hospital further argues that Plaintiff failed to allege "that Flowers had knowledge of any employment history of former Obstetrics Gynecology employees." (*Id*.). Finally, Flowers Hospital argues that Plaintiff failed to plead that it "had a duty to disclose the employment history of former Obstetrics Gynecology physicians" and/or that "such details regarding former employees were material facts." (*Id*.).

A review of the Complaint, however, reveals the following allegations:

> 48. During the course of negotiations Dr. Klivington inquired of an agent of Flowers Hospital, Heath Phillips, C.E.O., about the viability of the medical practice which she was expected to join, Obstetrics Gynecology. Dr. Klivington inquired whether said practice had a history of problems with the employment of medical staff. Dr. Klivington inquired whether the medical practice generally was known for having problems paying the physicians that worked for it. Dr. Klivington inquired whether any circumstances existed that should be of concern to a physician joining a local medical practice.

(Doc. 1 at pp. 16-17, ¶ 48). The Complaint additionally alleges that "Flowers Hospital, its agent[s] and personnel were aware of the fact that ten physicians had entered into employment agreements with Obstetrics Gynecology, none staying permanently, [and] that there were problems with staffing and problems with the payment of physicians providing medical services to Obstetrics Gynecology." (*Id*. at p. 17, ¶ 49). And the Complaint alleges that "Heath Phillips, C.E.O., acting in his position as employee of and agent for Flowers Hospital, did not disclose those facts to Dr. Klivington." (*Id*. at ¶ 50; *see also id*. at ¶ 51: "Flowers Hospital was aware numerous physicians hired by Obstetrics Gynecology had left he practice due to the practice environment including nonpayment for services provided and it deliberately and intentionally concealed the facts from Dr. Klivington after inquiry by Dr. Klivington").

4

With respect to the assertion that "Plaintiff does not plead Flowers had a duty to disclose the employment history of former Obstetrics Gynecology physicians to her" (Doc. 30 at p. 5), a duty to disclose may be created either by "confidential relations" or from the "particular circumstances of the case." Ala. Code § 6-5-102. Although the Alabama Supreme Court has recognized that "the law generally allows a business to keep confidential its internal operating procedures and data unless that information is specifically requested," *Freightliner, L.L.C. v. Whatley Cont. Carriers, L.L.C.*, 932 So. 2d 883, 892 (Ala. 2005), the Complaint specifically alleges that Plaintiff asked CEO Philips about the viability of the practice and whether the practice had a history of problems with the employment and/or payment of medical staff. (Doc. 1 at pp. 16-17, ¶¶ 48-51). The Complaint further alleges that "Heath Phillips, C.E.O., acting in his position as employee of and agent for Flowers Hospital, did not disclose those facts to Dr. Klivington." (Doc. 1 at p. 17, ¶ 49). The Complaint additionally alleges that Philips "knew difficulties existed between Dr. Voss, and numerous physicians Obstetrics Gynecology employed over a period of years" and that Phillips failed to disclose such information. (*Id.*). Plaintiff thus has sufficiently set forth in the Complaint the alleged basis for a duty to disclose, as well as what concealments are at issue, who was involved in the concealments, and when the concealments occurred. Accordingly, Flowers Hospital's motion to dismiss is due to be denied as to Count 3.

### B.     Count 8 – Fraud in the Procurement

Count 8 of the Complaint alleges that Flowers Hospital committed fraud in the procurement of a particular contractual agreement, to wit, the "Confidential Agreement." (Doc. 1 at pp. 36-40). Flowers Hospital makes the same argument for dismissal of Count 8 as it presented against Count 3: "Just as the elements of the fraud claims are the similar, Count 8 of Plaintiff's Complaint is likewise deficient for the same reasons as set forth for Count 3 of Plaintiff's Complaint."

(Doc. 30 at p. 6). Flowers Hospital specifically argues that "Plaintiff fails to indicate what misrepresentations of material fact Flowers allegedly made to Plaintiff" and that "[t]he vague reference to 'false representations' in Paragraph 111 of Plaintiff's Complaint does not provide Flowers sufficient information to address Plaintiff's Complaint." (*Id.*). Yet the claims in the Complaint are stated in much greater detail than Flowers Hospital acknowledges.

Regarding the Confidential Agreement, the Complaint contains the following allegations:

106. Agents and employees of Flowers Hospital met with Dr. Voss on the 16th day of April 2021. Obstetrics Gynecology routinely provided call lists, updated call lists and reported to Flowers Hospital changes to the call list contemporaneous with those changes. On or before the 16th day of April 2021 Dr. Klivington was removed from the call list. <u>Flowers Hospital was aware on the 16th day of April 2021 Dr. Klivington had been removed from the call list. Flowers Hospital tendered the Confidential Agreement to Dr. Klivington on the 16th day of April 2021</u>. (Exhibit 4)

107. Dr. Klivington was not aware she had been removed from the call list when she was tendered the "Confidential Agreement" by Flowers Hospital.

108. Knowing Dr. Klivington had been removed from the call list, Flowers Hospital demanded that Dr. Klivington agree to the Confidential Agreement containing a Focused Professional Practice Evaluation (FPPE) requirement scheduled to terminate on December 31, 2021. <u>In order to meet the requirements of the FPPE it is necessary that Dr. Klivington be on the call list, perform hysterectomies, cesarean sections and perform other clinical services</u>.

109. <u>In order to continue her clinical privileges at Flowers Hospital it was represented to Dr. Klivington by Flowers Hospital that she was required to execute the Confidential Agreement. It was also represented that the conditions imposed by the Confidential Agreement would be non-reportable to the National Practitioner Data Base</u>.

110. At the time Flowers Hospital required Dr. Klivington to execute the Confidential Agreement Flowers Hospital was on notice or should have been on notice of the cancellation of the medical malpractice coverage insuring Dr. Klivington. <u>At the time Flowers Hospital tendered Dr. Klivington the Confidential Agreement requiring the performance of the FPPE it was aware she would not be providing clinical services because her insurance had been cancelled, she was removed from the call list and her employer had removed her from clinical services. Flowers Hospital was aware it would not be possible for Dr. Klivington to complete the FPPE</u>.

6

(Doc. 1 at p. 38, ¶¶ 106-10) (emphasis added);

> 117.  At the time Flowers Hospital demanded Dr. Klivington sign the Confidential Agreement <u>it knew Dr. Klivington would not be able to renew her privileges and intended to report Dr. Klivington to the National Practitioners Data Base for voluntarily failing to renew her privileges even though the failure was involuntary</u>.

(*Id*. at pp. 39-40, ¶ 117) (emphasis added).  The Complaint likewise plainly alleges that Plaintiff relied upon the alleged misrepresentations:

> 111.  Dr. Klivington relied upon the false representations by Flowers Hospital that signing the Confidential Agreement would preserve her hospital privileges. <u>As a result of that reliance, she signed the Confidential Agreement</u>.

(Doc. 1 at p. 38, ¶ 111) (emphasis added).  The court thus concludes that Count 8 contains sufficient allegations to state a claim for fraud in the procurement and satisfies the specificity requirements of Rule 9(b).  *See, e.g., Oakwood Mobile Homes, Inc. v. Barger*, 773 So. 2d 454, 459 (Ala. 2000) ("Fraud in the inducement consists of one party's misrepresenting a material fact *concerning the subject matter of the underlying transaction* and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action.") (italics in original).  Any remaining questions or concerns may be properly addressed via discovery.

   **C.** **Count 9 – Intentional Infliction of Injury**

Flowers Hospital next argues that Count 9 of the Complaint, which is styled "Concerted Effort of Asha Voss, Obstetrics Gynecology And Flowers Hospital To Intentionally Inflict Injury," is not a cognizable claim under Alabama law.  (Doc. 30 at p. 7).  In response, Plaintiff appears to concede that Count 9, as pleaded, fails to state a claim and requests an opportunity to amend.  (Doc. 48 at p. 13).  Count 9 therefore is due to be dismissed without prejudice, and Plaintiff will be afforded leave to amend the Complaint so as to restate Count 9 should she so desire.

### D.     Count 12 – Conspiracy to Defraud

Count 12 of the Complaint purports to assert a claim for conspiracy to defraud.  (Doc. 1 at pp. 63-65).  The Alabama Supreme Court has described a conspiracy claim as follows:

> "A civil conspiracy requires a combination of two or more individuals to accomplish a lawful end by unlawful means." *Drill Parts & Serv. Co. v. Joy Manufacturing Co.,* 619 So. 2d at 1290 (quoting *Nelson v. University of Alabama System,* 594 So. 2d 632, 634 (Ala.1992), *cert. denied,* 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992)).  A civil conspiracy action focuses not on the conspiracy alleged, but on the wrong committed by virtue of the alleged conspiracy. *Sadie v. Martin,* 468 So .2d 162, 165 (Ala.1985).  Conspiracy itself furnishes no civil cause of action. *Allied Supply Co. v. Brown,* 585 So .2d 33, 36 (Ala.1991). Therefore, a conspiracy claim must fail if the underlying act itself would not support an action. *Id.*

*Triple J Cattle, Inc. v. Chambers*, 621 So. 2d 1221, 1225 (Ala. 1993).

Flowers Hospital first argues that "[a]s with Plaintiff's other fraud claims against Flowers, Count 12 falls well short of this basic pleading threshold," specifically realleging that "Plaintiff's Complaint fails to state the time, place, the contents and substance of the alleged false representations or fact misrepresentations."  (Doc. 30 at p. 9).  Flowers Hospital is correct that the allegations of fraud in Count 12 are functionally identical to those in Count 3; however, as discussed above, Count 3 contains sufficient allegations to satisfy the pleading requirements of Rule 9(b).

Flowers Hospital next argues that Count 12 fails to state a conspiracy claim because "nowhere in the lengthy factual recitations of Plaintiff's Complaint is there an allegation that Flowers Hospital actually engaged in a conspiracy with another defendant or third-party." (Doc. 30 at p. 10).  Contrary to the assertion by Flowers Hospital, the Complaint alleges that "Obstetrics Gynecology and Flowers Hospital, <u>by either express or tacit agreement</u>, concealed the fact there had been monetary payment disputes relating to Obstetrics Gynecology and pay due physicians Obstetrics Gynecology employed."   (Doc. 1 at p. 64, ¶ 199) (emphasis added).

For these reasons, the claim for conspiracy as asserted in Count 12 is not properly subject to dismissal at the pleading stage.

### E. Count 21 – Libel

Count 21 of the Complaint alleges that Flowers Hospital committed libel by reporting to the National Practitioner Data Base that Plaintiff "voluntarily fail[ed] to renew her privileges while subject to an FPPE." (Doc. 1 at pp. 83-85; *id*. at p. 85, ¶ 264). Because the claim involves a written communication relating to Plaintiff's profession, the standard for libel per se applies:

> Slander is about the spoken word, and libel is about the written word. Because libel is more permanent, the standard for libel per se under Alabama law is lower than the standard for slander per se. It requires a written communication that "directly tend[s] to prejudice anyone in his office, profession, trade, or business, or in any lawful employment by which he may gain his livelihood." *Kelly v. Arrington*, 624 So. 2d 546, 549 (Ala. 1993). A written communication does not have to involve widespread publication. It may involve a single letter transferred to a third person, such as Dunn's transfer of his written complaint to the newspaper. *Penry v. Dozier*, 49 So. 909 (Ala. 1909) ("There must be a communication to some person other than the plaintiff and defendant. It is not necessary that it be made known to the public generally."). The Court reads the allegedly defamatory statements as "a reader or listener of 'average or ordinary intelligence....'" *Camp v. Yeager*, 601 So. 2d 924, 927 (Ala. 1992) (quoting *Loveless v. Graddick*, 325 So. 2d 137, 142 (Ala. 1975)).

*Butler v. Dunn*, No. 2:19-CV-530-ALB, 2019 WL 7041866, at *5 (M.D. Ala. Dec. 20, 2019) (footnote omitted).

The parties do not dispute that Flowers Hospital made a written communication to the National Practitioner Data Bank reporting that Plaintiff had failed to complete the FPPE. (Doc. 1 at p. 85, ¶ 263; Doc. 30 at p. 10). Rather, Flowers Hospital argues that the report was accurate and required by federal statute—therefore excepting it from serving as the basis for a libel claim. (Doc. 30 at p. 11); *see also Birmingham Broad. (WVTM-TV) LLC v. Hill*, 303 So. 3d 1148, 1158 (Ala. 2020) ("One who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true.") (citing Restatement (Second) of Torts § 581A (1977)).

9

The crux of the argument for pleading purposes boils down to the word "voluntarily." Flowers Hospital claims that it cannot be held liable because its report was truthful. (Doc. 30 at p. 12). Plaintiff contends that the report was not truthful because completion of the FPPE had been rendered impossible and thus her non-completion was anything but "voluntarily" done. (Doc. 1 at pp. 84-85, ¶¶ 260-61, 263). Plaintiff further contends that the term "voluntarily" in the context at issue could be construed as implying that she had been the subject of a federal or state investigation. (Doc. 48 at p. 22). And Plaintiff contends that the written disclosure was made "deliberately and intentionally." (Doc. 1 at pp. 84-85, ¶¶ 262, 264). Moreover, and although Flowers Hospital refers generally to "Title IV of Public Law 99-6660," it does not direct the court to any particular code section resulting from that legislation or cite to any specific provision articulating the nature or circumstances under which a hospital must make a report, what information must be included in such a report, or what information was included in the report submitted regarding Plaintiff. The motion to dismiss thus is due to be denied as to Count 21.

F.   **Count 22 – Intentional Interference with Job Opportunities**

Count 22 of the Complaint alleges that Flowers Hospital intentionally interfered with Plaintiff's ability to obtain employment with other medical facilities. (Doc. 1 at pp. 86-88). However, Flowers Hospital asserts that Count 22 fails to state a cognizable claim:

> Plaintiff is not alleging that Flowers interfered in any way or otherwise engaged in any affirmative act to hinder Plaintiff's attempts to procure employment elsewhere. Rather, Plaintiff's claim seems to rest on the allegation that Flowers did not sufficiently intervene on Plaintiff's behalf to help her to get another job elsewhere.

(Doc. 30 at p. 14). Plaintiff argues in response that, based on industry practices, the refusal to transmit requested information to a potential employer resulted in actionable interference with future employment. (Doc. 48 at p. 25).

The elements of the tort of intentional interference with a business relationship are "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009).  The court finds for purposes of Rule 12(b)(6) that Plaintiff has sufficiently pleaded facts going to each of those elements.  Specifically, Plaintiff has alleged a prospective business relationship with North Alabama Regional Medical Center, has alleged that Flowers Hospital intentionally refused to provide a procedure log to that entity despite its request, that the entity thereafter denied Plaintiff employment, and that Plaintiff suffered various other forms of injury and damage.  (Doc. 1 at pp. 87-88, ¶¶ 271-72, 274-75).  Count 22 is not subject to dismissal, and the motion to dismiss is due to be denied in that regard.

IV.   **Conclusion**

For the reasons stated above, and particularly in light of the favorable construction afforded to Plaintiff's allegations in the present posture, it is hereby **ORDERED** that the motion to dismiss (Doc. 30) filed by Defendant Triad of Alabama, LLC d/b/a Flowers Hospital is **GRANTED** as to Count 9, which is hereby **DISMISSED WITHOUT PREJUDICE**, and **DENIED** as to Counts 3, 8, 21, and 22.  It is further **ORDERED** that Plaintiff is granted leave to file an amended complaint that repleads Count 9 no later than **September 8, 2023**.

**DONE** this the 25th day of August 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**